Mr. Chaube. Good morning, Your Honors. May it please the Court, I'm Robert Chaube, and I'm appearing today on behalf of the petitioner Mario Morales-Abrego. Just a couple months ago, in a case called Hernandez-Gill v. Ashcroft, this Court held that, quote, when an immigrant has engaged counsel and the I.J. is aware of the representation, if counsel fails to appear, the I.J. must take reasonable steps to ensure that the immigrant's statutory right to counsel is honored. In this case, no one disputes the petitioner is an immigrant who has engaged counsel. No one disputes that the I.J. was aware that the petitioner had engaged counsel, and no one disputes that the petitioner's counsel failed to appear at the petitioner's removal hearing. So the pivotal question, really the only question in this case, is whether the I.J. took reasonable steps to ensure that the petitioner's statutory right to counsel was honored. Now, in our view, when he learned that the petitioner's counsel had been suspended by the State Bar of California and was, therefore, unable to represent the petitioner at his May 12, 2004 hearing, the I.J. should have immediately taken several steps. First, he should have ensured that the petitioner understood that his attorney had been suspended, that he was being disciplined, and that he was, therefore, unable to represent the petitioner until he was reinstated. Second, since the petitioner's attorney, Otto Pena, had actually invited the immigration judge to contact him with any questions he might have regarding this case, the I.J. should have picked up the phone and called Mr. Pena and asked him, when were you suspended? If you were suspended in December of 2003, as the State Bar's webpage indicates, why didn't you inform the court at that time? Why didn't you inform EOR General Counsel of your suspension within 30 days, as you were required to do, by the governing regulations, that's 1003.103C? Why did you wait until just 11 days before this poor guy's hearing to finally draft a letter acknowledging that you've been suspended by the State Bar of California? But the I.J., he didn't do any of that. For whatever reason, he didn't see fit to bother Mr. Pena, although Mr. Pena had expressly invited him to do so in his May 1, 2004 letter. Instead, he put the petitioner under oath and started taking testimony. Now, from our perspective, this was profoundly improper, because although the I.J. admittedly has some legitimate interest in Mr. Pena had been suspended, and when the petitioner has learned about that suspension, the immigration judge knew that this man was represented by an attorney. And he also knew that that attorney was not there to defend his interests during the questioning that the I.J. engaged in. Moreover, at the time of the hearing, this, the petitioner in this case was a 19-year-old boy. He'd been in this country for less than two years. According to his asylum application, he had no formal education whatsoever, none. And he'd never been through any legal proceeding whatsoever. Now, from our perspective, it's obvious that an immigration judge should not question an unsophisticated person like this under oath who has engaged counsel outside the presence of that counsel. That is, the I.J. can't encroach on the right to counsel while attempting to determine whether a continuance for counsel is appropriate. But that's exactly what the immigration judge did here, and not unexpectedly. The petitioner got nervous. He got confused. He made mistakes. He contradicted himself. But that's what's going to happen when you have a young, uneducated, unsophisticated alien who, without any preparation from counsel, is forced to fend for himself in a foreign court. What do you think of the immigration judge's conclusion that Mr. Montes Lopez had lied to him about the last time he talked to his attorney? Well, Your Honor, I think that if Mr. Montes Lopez or Mr. Morales-Abrego had been represented by counsel, if he had an attorney there to represent him in his interest, I don't think the immigration judge would have come to that same conclusion. And I say that for a couple different reasons. I mean, first, the petitioner testified that he had received the Otto Peña's letter just the day before the hearing. And if you look at, I believe it's, let me pull it up here. At the end of the testimony, the judge or the trial attorney asked to see the envelope that Otto Peña's letter had come in. And Mr. Morales-Abrego provided that envelope, and this is on pages 96 and 97. The judge inspected it. The trial attorney inspected it. No one suggested that that envelope in any way contradicted his testimony that he had received that letter just the day before. Now, if a lawyer had been there defending this guy's interest, the lawyer would have put that on the record, would have stated for the record precisely what that envelope said. He would have asked to have that envelope admitted into evidence. But there was nobody there to protect this guy's interest, so that never happened. Moreover, you know, the testimony that's in question here about whether this petitioner lied, this is really set forth on page 78. And I sort of want to walk through that in detail because it seems to me that if a lawyer had been here, a lawyer would have questioned whether there had been a proper interpretation of the critical question in this case. This begins on the bottom of page 77 where the judge says, when did you last talk to Mr. Pena? On the top of 78, it says, last week. Did you talk to him in person? No. By phone? Yes. And this is the pivotal sentence, it seems to me. Okay. And that was after you received the letter? And he says yes. And the thing sort of deteriorates from there. But if I were representing this guy, if this guy had a lawyer and this inconsistency developed, I think what any lawyer would have said is, Your Honor, first off, if it were a Hispanic-speaking lawyer, he would have been listening to the interpretation of that question. Because the question, and that was after you received the letter? I suspect that that was interpreted as something like, did you speak with him after you received that letter? It's a very slight difference, you know, and it's easy. You can imagine an interpreter saying something, and did you speak with him after you received that letter, rather than, and that was after you received that letter? And if an attorney had been there, he would have been listening for that translation. He would have asked to have the tape played back to see what precisely was said. This guy didn't have the opportunity to do that because he didn't have a lawyer there to represent him. The bottom line in this case is what the immigration judge did. He is, in assessing whether or not this guy was deserving of a continuance to fine counsel, he put him under oath, he made him testify, and thereby violated the very right that this guy was seeking to protect. And that's the error in this case. May I ask about your view of the necessity of showing prejudice, either in securing the statutory right of counsel or in terms of a due process analysis? Well, obviously, this Court has not decided that question. I mean, it seems like the cases where the issue of prejudice comes up, prejudice is defined rather generously. I mean, it's really a question of whether or not the case could have been presented in a more effective manner. And using that definition, there's no doubt that there is prejudice in this case. Yes. I was talking more of the generic idea about that, since we haven't reached the question of whether, A, prejudice is required in a due process case, or, B, whether prejudice is required to be shown in a violation of the statutory right to counsel case. It seems to me that the right to counsel is so fundamental. And where counsel is not provided, you have no idea what would have really happened at this guy's hearing if he had a competent attorney representing him. Like I say, there may have been translation issues. There would have been evidence that was presented. I think you have to presume that there's prejudice, because we have no way of knowing how this would have unraveled, this case would have turned out, if counsel had been present to defend this man's interest. But you don't have to reach that question in this case, because under this Court's definition of prejudice, there's no doubt that this guy suffered prejudice. He was threatened by gangs in El Salvador. He could have made a social group argument that individuals who had been threatened by these Salvadoran gangs and refused to join them are a social group. Clearly, those threats to him, arguably at least, they rise to the level of persecution. He clearly has a plausible claim to asylum. He was clearly prejudiced by the lack of counsel. Because what's important here, Your Honor, is let me just go back to the immigration issue. We've had case after case, counsel, where the threat for failure to join the gang or to join the guerrillas or to join the paramilitaries has been considered to be not persecution. No. What those cases actually hold, Your Honor, is that it's not persecution on account of political opinion. Because Elias Zacharias, the theory of that case wasn't a social group theory.  And the issue of whether individuals refused to join them. They also hold that that isn't persecution, that the threat is not persecution. No. I disagree with that. There's a long line of cases in this circuit that hold that threats themselves can rise to the level of persecution, but they don't always. Even if this wasn't enough to constitute past persecution, the threat certainly is enough to give this guy a basis to claim a reasonable fear of future. But the issue in Elias Zacharias and those various cases, you're talking about Maldonado Cruz and the others, the issue there is whether the threats were on account of political opinion, whether the person's refusal to join necessarily is what the Supreme Court said, necessarily was political. That's not the theory that I would have made in this case. I would have gone with a social group theory. That's an issue that's never been decided by this Court or the Supreme Court. That's an issue that I think is a winner. And if this guy had a lawyer, that's the argument that should have been made. One more quick question before I sit down on another topic. The Board engaged in a summary affirmance in this case. When there's a due process issue, that always puzzles me. The Board hasn't. The Board requires exhaustion of due process, procedural due process. But then when it affirms for the reasons stated below and then also says that's the final agency action, how are we supposed to deal with that on review? Right. I agree with that point. I mean, it seems to me that the agency's never fully addressed the position that we're taking. I mean, in front of the immigration judge, obviously this guy had no lawyer, so the argument was never really developed is that he was being denied the right to counsel. That was developed for the first time really before the Board. And by summary affirming, the Board just really sort of blew that issue off. It didn't address it. And the odd thing to me is it's not only a summary affirmance from which you might draw a different conclusion. They said, well, then the final agency action is the decision below. And, of course, the due process issue wasn't presented to the I.J. because it's the I.J.'s actions that are issued in a due process appeal. Right. Exactly. And so what we're stuck with is just that very short portion of the immigration judge's decision where he addresses this. But he's not addressing really the right to counsel. It's possibly enough for this Court to review it, but it's certainly not a thoughtful analysis. Thank you. Did the record ever straighten out what this Petitioner's name really is? Well, his true and correct name is Morales-Abrego, and he testified to that. And his asylum application sets that forth. When he arrived in the United States, apparently at the point of entry, he gave a false name, which is unfortunate. But his name apparently has followed him through the docketing process. Exactly. And that is normally the case. Thank you. Our questions have taken you over. We'll give you a couple minutes for a moment. Mr. Truman. Your Honors, may it please the Court, Michael Truman again, government. Do you mind starting where I left off, just as a practical matter? What are we to do when there's a due process appeal or due process issue that is briefed before the Board, and then the Board summarily affirms without deciding the issue, and the issue, because it's based on what the I.I.J. did, How do we deal with that? Well, I think it's important to think of that question in terms of what happened here, because clearly Petitioner has couched his claim in violation of the right of due process or violation of the right to counsel in due process terms. When the Court is required under due process to give a knowing and voluntary waiver of the right to counsel, if the alien refuses to give a knowing and voluntary waiver, the immigration judge isn't required to proceed at all costs. The immigration judge is required to make an inquiry on whether there is good cause to continue the proceeding so he can obtain counsel. So the right to counsel question and the continuance question are really two sides of the same coin in this case. What happened was, is Petitioner is Let me ask you this in terms of, because this comes up in other cases. I mean, it's an odd procedural posture we find ourselves in, because the Board takes the Well, you take the position, the government, that these issues need to be exhausted before the Board and that we shouldn't decide them in the first instance. But when it appears as though there is a new issue that's raised legitimately on appeal of due process, which has to do with the conduct of the hearing, I don't know how you can If the Board doesn't rule on that, what are we to make of that? And also when it says, therefore, the decision of the immigration judge is the final agency decision. So obviously the due process, in the normal case, and I understand your argument in this case, but in the normal case, it can't be brought before the I.I.J. because you're basing it on what the I.I.J. did. Right. I understand that. And I realize that Analytically, how do you suggest we handle it? There is no agency. In the situation you're talking about, there is no agency decision on the due process claim. In this case, the due process So in my hypothetical, let's just call it a hypothetical, you think what we ought to do if the Board hasn't ruled on it, we have to remand? Well, I think you have to look at each circumstance in each case. Because in this case, the immigration judge knew that he was requesting a continuance to obtain counsel. And the Board, when it was reviewing the immigration judge's decision, knew from the record that the alien, that the petitioner was requesting a continuance to obtain counsel. So it knew that the right to counsel, the privilege to obtain counsel, was involved in the immigration judge's decision. The Board knew that. And when it affirmed that opinion, it simply stated that what the immigration judge did was proper. Does the immigration judge in any way discuss the claim for counsel? Well, again, the I couldn't find it. Again, the right to counsel claim really is a right for a continuance in this case, or whether there's good cause to continue this case to procure counsel. That's the decision. And this is acknowledged by Petitioner in his brief. That's the real question here, is whether there was good cause to continue these proceedings. And under the Biwak case, this Court has held that there's several factors you look at. One of the factors you look at is whether the alien is requesting this continuance in good faith. And this goes to the question of the misrepresentation of the lie that the petitioner told the immigration judge. And I think it's good to look at the actually what happened here. This is on page 77 of the record, 77. Hold on. Where are you? Page 77 and 78 of the administrative record. Go ahead. It's important to look at when this occurred. This was right at the very outset of the proceedings. The immigration judge asks Petitioner his name, asks Petitioner his address, and then he says, you just handed me this letter saying that your attorney's been suspended and cannot appear today. And he says, when did you last talk to Mr. Pena? And he answers, last week. And he says, by the phone. He goes by phone. Okay. Was that after you received this letter? He says, yes. And then the immigration judge says, the letter was dated May 1st. Why did you wait until today to give it to me? He says, because I just received it yesterday. That was the lie he was caught in. He was saying that a week ago I talked to him about this letter. And then when the immigration judge says, well, why didn't you bring this up a week ago, he says, oh, I just got it yesterday. So where's the finding of bad faith in the findings? We review the findings and conclusions. You're saying we should infer bad faith. Well, the immigration judge's decision was based on the fact that he was lied to. He didn't say that. He didn't say that. I denied the right to counsel because I found this person to be in bad faith. Did he? No. He denied the conclusion. So how are we to review? The denial of the right to counsel and decide whether the IJ did it properly or not when there's no findings either by the BIA or the IJ as to bad faith or anything else? Go ahead. Didn't he really make some sort of a finding along this line? He himself appeared before this Court today and present untruthful testimony in an attempt to delay the proceedings of this case, which he later admitted that he lied to the court. That's exactly right. The immigration judge ---- Do you consider that to be a finding of adverse credibility as to the petitioner and that he lied to the court in order to try to get a continuance for trial counsel to be obtained? Right. Absolutely. Based on the lie, it was reasonable for the immigration judge to consider his excuses for wanting to delay suspects. Let me refine my question a bit because Judge Bay is absolutely right about the state of the record. But what we don't have here is a finding that said that would go down the factors in saying, I'm going to deny the right to counsel because X, Y, and Z, and it's in bad faith. We have to sort of infer that, right? Well, it's not deny a right to counsel. It's deny a request for a continuance. We would argue that's reviewed under the abuse of discretion standard. And the immigration judge, considering the numerous continuances he's had in the And he mentions that factor. He says, because he's lied to me, I don't really know. And the immigration judge says, I don't even know if his counsel has been suspended or not. That's kind of suspect for me. Okay. I think you're taking me where I was originally, which is this. You've categorized it as denial of continuance. I understand that argument. They say, no, this amounts to a denial of counsel. That's the question I think hasn't been decided by anybody in the administrative agency because that argument wasn't presented to the I.J. The I.J. just said I'm denying the continuance. There's another layer of whether that amounted to denial of the right to counsel. Now, so my question is, the BIA doesn't do anything with it. It doesn't deal with the argument. Analytically, how are we supposed to deal with that on appeal? Well, I think you're right in stating that if the board hasn't ruled on a particular issue that has raised an appeal, then that's not – that hasn't been presented before the board and that needs to be remanded. Yeah. Your argument in this case is that we have all we need. Is that it? Yeah. And my argument is that really the immigration judge knew that the request for a continuance was to obtain counsel. And the board knew that that was the analysis or the decision that the immigration judge had to make. And this Court's case in Biwat, it's clear that the immigration judge isn't required to continue the proceedings at all costs when an alien shows up without counsel. It's simply not required. The immigration judge must make a determination whether there's good cause to continue the case. And that's what this case is about. And Petitioner recognizes that in the brief. But this case is about whether there was a proper – it was properly continued or there was a properly not continued, I guess, in this case. You look at the numerous continuances he's obtained in the past. He contained over a year's worth in preparation for this hearing. He obtained a month-long continuance to obtain counsel, two months-long continuance to prepare an asylum application. He obtained 10 months of a continuance to prepare for this hearing. You can't say when he showed up at the hearing that he wasn't expected to go forward. In fact, the record indicates, and this I think is significant, that on previous occasions, he's had very short notice to obtain counsel, relatively short notice to obtain counsel, and he's done so. He's done so. He obviously knew how to obtain counsel. He knew how to contact an attorney, how to procure counsel. He had several different attorneys representing him during these proceedings. So I think it's clear that the immigration judge did not abuse his discretion in denying this additional request for continuance. And furthermore, it's – And his counsel had not formally withdrawn at that point, had he? Excuse me? Has the counsel formally withdrawn? Oh, Your Honor. So he was represented by counsel. He was represented by counsel. And the I.J. examined him without his attorney there, right? Right, Your Honor. So what conclusions do we draw from that? Again, the immigration judge isn't required to delay proceedings indefinitely. Suppose his attorney had been suspended for five years, and he came in and said, my attorney is suspended for five years. Can we delay the proceedings for five years? The immigration judge is not required to delay those proceedings indefinitely until his counsel comes to represent them. That's why these things are put in the immigration judge's discretion and whether it's – this case really turns on whether there was good cause to continue the proceedings or not. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Both in the transcript and in the immigration judge's decision, the immigration judge says – this is on page 46. This is the I.J.'s decision. This Respondent has had since July 17, 2003, to prepare his case, including obtaining new counsel. That's a key aspect of the I.J.'s conclusion here, that this guy had enough time to find counsel, but it's just wrong. This man hired Mr. Pena on May 6, 2003. That's set forth on page 153 of the administrative record. On July 17th, the date that the judge is referring to, Mr. Pena represented him at a master counter hearing, and he continued as his counsel right up until the May 12, 2004 hearing. The problem isn't that he – that Mr. Morales-Abrego was delaying in finding counsel. He found counsel. He had a lawyer. The problem was that his lawyer got suspended. And the critical question here is, when did this petitioner learn that his lawyer had been suspended? But the immigration judge never asked that question. Instead, he got focused on, did you get this letter the day before the hearing or a week before the hearing? And it's our view – this is where he found the petitioner to be lying – but it's our view that whether it was the day before the hearing or the week before the hearing is irrelevant. In neither case would he have had enough time to prepare for a hearing on the merits of his asylum claim. Let's assume that he did get the letter a week before, even though the postmark on the envelope appears to say he got it the day before. Let's assume he got it a week before. The deadline had already passed for submitting documents in support of this guy's asylum claim. Under the San Francisco local rules, documents in support of an application for asylum had to be submitted 15 days in advance of the hearing. But this guy learned a week before the hearing that his lawyer wasn't going to be able to represent him. It was already too late to present evidence in support of his case. What evidence would he have presented? Well, there was no evidence presented here. He would have been able to – Can you answer the question? Yes, sir. What evidence would he have presented that he was not able to present? What prejudice did he have? Again, it's somewhat speculative because I wasn't representing him at the time, but we would have been gathering witnesses, certainly country conditions evidence, and developing his testimony. At this point, what evidence was presented was only that submitted by the immigration judge during questioning and the government lawyer. Because this guy had no lawyer. He didn't present anything in addition to what the government presented. He presented no case whatsoever. And that's prejudicial. Thank you. Case just heard will be submitted.
judges: Goodwin, Thomas, Bea